UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STERLING HICKS,

       Petitioner,

v.                      Case No: 2:12-cv-511-FtM-29CM

KENNETH TUCKER,

       Respondent.

_____

**OPINION AND ORDER**

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Sterling Hicks[1] ("Petitioner") who is presently confined at the Calhoun Correctional Institution in Blountstown, Florida (Doc. 1, filed September 14, 2012). Petitioner, proceeding *pro* se, attacks the conviction and sentence entered by the Circuit Court of the Twentieth Judicial Circuit in Lee County, Florida for one count of engaging in sexual activity with a child in violation of Florida Statute § 794.011(8)(b). Id. Respondent filed a response to the petition, and Petitioner filed a reply and supplemental replies to the response (Doc. Nos. 6, 11, 16, 18).

_____

[1] Petitioner's first name is inconsistently spelled as "Sterling" and "Stirling" in the record before this Court. Because Petitioner signs his pleadings as "Sterling Hicks," this is the name that will be used by this Court throughout this Order.

Petitioner raises eleven claims in his petition.  He asserts that: (1) the trial court erred by allowing the admission of prejudicial hearsay evidence at trial; (2) blood was drawn from Petitioner pursuant to an invalid warrant; (3) appellate counsel was ineffective for failing to object to an invalid information; (4) appellate counsel was ineffective for failing to argue that the jury was erroneously instructed; (5) trial counsel was ineffective for failing to request a hearing to challenge false statements made in a probable cause affidavit; (6) trial counsel was ineffective for failing to move for dismissal of the charges; (7) trial counsel was ineffective for conceding that Petitioner was the father of the victim's child; (8) trial counsel was ineffective for failing to voir dire a potential juror; (9) trial counsel was ineffective for failing to object to the state's improper appeal to the jury's sympathy during closing argument; (10) trial counsel was ineffective for failing to object to the admission into evidence of an oral swab taken from the infant of the victim; and (11) when considered in the aggregate, counsel's errors and omissions were sufficiently prejudicial to warrant habeas relief (Doc. 1 at 3-17).

Upon due consideration of the pleadings and the state court record, the Court concludes that the petition must be denied. Because the Court may resolve the Petition on the basis of the

record, an evidentiary hearing is not warranted.  <u>See</u> Rule 8, Rules Governing Habeas Corpus Petitions under Section 2254.

## I.   <u>Background and Procedural History</u>

On February 10-12, 2009, Petitioner was tried by a jury on one count of engaging in sexual activity with a child twelve years of age or older but less than eighteen years of age by a person in familial or custodial authority (Ex. 5).[2]  On February 13, 2009, the jury returned a verdict finding Petitioner guilty of engaging in sexual activity with a child (Ex. 6).  Petitioner was sentenced to twenty-five years in prison to be followed by five years of sex offender probation (Ex. 8).  Florida's Second District Court of Appeal *per curiam* affirmed Petitioner's convictions and sentences on November 19, 2010 (Ex. 11); <u>Hicks v. State</u>, 49 So. 3d 244 (Fla. 2d DCA 2010).

On January 25, 2011, Petitioner filed a state petition for writ of habeas corpus in which he raised claims of ineffective assistance of appellate counsel (Ex. 13).  The petition was denied on March 15, 2011 (Ex. 14); <u>Hicks v. State</u>, 59 So. 3d 1143 (Fla. 2d DCA 2011).

On January 31, 2011, Petitioner filed a post-conviction motion pursuant to Rule 3.850 of the Florida Rules of Criminal

---

[2] References to exhibits are to those filed by Respondent on February 8, 2013 (Doc. 8).  Citations to the trial transcript, located in exhibit five, will be (T. at ___).

Procedure ("Rule 3.850 motion") in which he raised seven claims of ineffective assistance of trial counsel (Ex. 16). The post-conviction court denied the claims (Ex. 18). Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 22); <u>Hicks v. State</u>, 95 So. 3d 226 (Fla. 2d DCA 2012).

Petitioner signed the instant petition on September 11, 2012 (Doc. 1).

## II. <u>Governing Legal Principles</u>

### A. **Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")**

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. <u>Ferguson v. Culliver</u>, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406).  The unreasonable application inquiry "requires the state court decision to be more than incorrect or

erroneous," rather, it must be "objectively unreasonable." <u>Lockyer</u> <u>v. Andrade</u>, 538 U.S. 63, 75-77 (2003) (citation omitted); <u>Mitchell</u>, 540 U.S. at 17-18; <u>Ward</u>, 592 F.3d at 1155.  Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>White</u>, 134 S. Ct. at 1702 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 131 S. Ct. 770, 786-787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) (dictum).  When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see, e.g.</u>, <u>Burt v. Titlow</u>, 134 S. Ct. 10, 15-16 (2013); <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

**B.   Standard for Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a
two-part test for determining whether a convicted person is
entitled to relief on the ground that his counsel rendered
ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner
must establish that counsel's performance was deficient and fell
below an objective standard of reasonableness and that the
deficient performance prejudiced the defense. Id.   This is a
"doubly deferential" standard of review that gives both the state
court and the petitioner's attorney the benefit of the doubt.
Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct.
1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is
"reasonableness under prevailing professional norms." Strickland,
466 U.S. at 688-89.  In reviewing counsel's performance, a court
must adhere to a strong presumption that "counsel's conduct falls
within the wide range of reasonable professional assistance." Id.
at 689.  Indeed, the petitioner bears the heavy burden to "prove,
by a preponderance of the evidence, that counsel's performance was
unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir.
2006).  A court must "judge the reasonableness of counsel's
conduct on the facts of the particular case, viewed as of the time
of counsel's conduct," applying a "highly deferential" level of

judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The Eleventh Circuit has applied the Strickland test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims. See Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989). Therefore, in order to succeed on an ineffective assistance of appellate counsel claim, a petitioner must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense. Strickland, 466 U.S. at 687. In Cross v. United States, 893 F.2d 1287 (11th Cir. 1990), the Eleventh circuit held that in order to determine prejudice, the court must first perform "a review of the merits of [the omitted or poorly presented] claim." Id. at 1290.

If the Court finds that the neglected claim would have a reasonable probability of success on appeal, a district court would find "appellate counsel's performance prejudicial because it affected the outcome of the appeal." Id.

**C.    Exhaustion and Procedural Default**

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
>
> > (A)   the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)
> > > (i)      there is an absence of available State corrective process; or
> > >
> > > (ii)     circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of

the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).  In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).  Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish cause for procedural default, a petitioner must

demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted).   To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  Murray v. Carrier, 477 U.S. 478, 479-80 (1986).   Actual innocence means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995).   In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

## III. **Analysis**

### A.   **Claim One**

Petitioner asserts that he was deprived of his right to confront the witnesses against him in violation of the Sixth and

Fourteenth Amendments to the United States Constitution (Doc. 1 at 3-4). Specifically, Petitioner alleges that expert witness Beth Ordeman, a DNA analyst for the Florida Department of Law Enforcement, testified that other analysts reviewed her work, thereby bolstering her testimony with hearsay evidence. Id.

Petitioner raised this claim on direct appeal (Ex. 9 at 19-23). In response, the state argued that the issue had not been properly preserved for appellate review because Petitioner did not raise the claim in the trial court (Ex. 10 at 3-6). The appellate court affirmed without a written opinion (Ex. 11). Respondent now argues that this claim is procedurally defaulted because Petitioner did not preserve this claim for appeal (Doc. 6 at 5-6). A review of the record supports Respondent's argument.

At trial, the state presented the testimony of Beth Ordeman, a DNA analyst for the Florida Department of Law Enforcement (T. at 560). Ms. Ordeman testified that based upon her analysis of Petitioner's DNA, the victim's DNA, and the DNA of the victim's child, Petitioner had "a greater than 99.99 percent chance of being the [child's] father than a random person in the population." Id. at 576. Ms. Ordeman was asked how she knew that her DNA analysis was done correctly. Id. at 564. Ms. Ordeman testified:

> There are several quality control procedures that are set in place throughout the entire process.

I run extraction blanks with all of my samples, which are samples that are to remain free and clear of any DNA or contamination in the whole entire process.

I also run positive and negative controls.

Positive controls are known DNA samples that are processed throughout the entire DNA process. That is a known DNA sample, so I know what the DNA profile should be at the end of my process, and that needs to be correct at the end of the process for that whole analysis to be correct.

The negative controls also should be remaining free and clear of DNA. That's also another control that can check for contamination during the process.

Once my entire process is complete, my data is looked at by a second DNA analyst that verifies that I have called all of the DNA types correctly.

Once that is done and I have formulated my opinions or put my reports together, then the – another analyst in the section does a technical review of my file. They go through every single page of the file to insure that I have followed all of the operating procedures that we have in place.

Then, once that is complete, the supervisor goes through and does an administrative review of the entire file, making sure that all of the pages have my initials, case number, and everything is spelled correctly.

So there's three full reviews that are completed once I'm done with my analysis, and as long as all of those are correct and accurate, that all shows that the analysis has been done properly.

Id. at 565-66. Defense counsel made no objection to Ordeman's

testimony regarding her quality control procedures.

Defense counsel waived any objection to Ordeman's testimony by failing to object to the testimony during trial.  Under Florida law, errors that have not been preserved by contemporaneous objection can be considered on direct appeal only if the error is fundamental. Goodwin v. State, 751 So. 2d 537, 544 (Fla. 1999) ("If the error is not properly preserved or is unpreserved, the conviction can be reversed only if the error is 'fundamental.'"). Fundamental error is "error which goes to the foundation of the case or goes to the merits of the cause of action." Hopkins v. State, 632 So. 2d 1372, 1374 (Fla. 1994).

The mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reviewing a federal claim. "[T]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." Harris v. Reed, 489 U.S. 255, 262 (1989).  Because the appellate court issued no written opinion, the record fails to contain "a 'plain statement' that [the state court's] decision rests upon adequate and independent state grounds." Harris, 489 U.S. at 261 (quoting Michigan v. Long, 463 U.S. 1032, 1042 (1983)).  However, the state briefed this issue in its response to Petitioner's brief on direct appeal and strenuously argued that petitioner had failed to preserve this error for appellate review, an argument not specifically rejected by the appellate court (Ex. 10).  Accordingly, the appellate

court's rejection of the claim is presumed to rest on the state procedural bar asserted in the answer brief. See Bennett v. Fortner, 863 F.2d 804, 807 (11th Cir. 1989) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."). Petitioner does not establish (or even allege) that the error raised in claim one constituted "fundamental error" under Florida law.  Therefore, claim one is unexhausted.  Petitioner does not show cause for his default or prejudice, and he does not demonstrate that the fundamental miscarriage of justice exception applies.  Accordingly, claim one is dismissed as unexhausted and procedurally barred.

Moreover, even assuming *arguendo* that claim one was exhausted, Petitioner has not shown how Ordeman's testimony regarding the quality assurance review of the DNA testing procedures at the FDLE laboratory implicates the Confrontation Clause of the United States Constitution.  The Confrontation Clause of the Sixth Amendment prohibits the introduction of out-of-court statements that are "testimonial," unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36 (2004). The Supreme Court in Crawford, and later in Davis v. Washington, 547 U.S. 813 (2006), outlined the analytical steps to follow when

evaluating whether the admission of a hearsay statement is barred by the constitutional guarantee. Generally, "the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement is testimonial,[3] (2) the declarant is unavailable, and (3) the defendant lacked a prior opportunity for cross-examination of the declarant." Blanton v. State, 978 So. 2d 149, 154 (Fla. 2008). The Crawford court reaffirmed the proposition that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59-60.

The situation in Petitioner's case – namely, where an expert testifies about the procedures used to verify her *own* results — is not a situation contemplated by Crawford or its progeny. "[T]he Confrontation Clause prohibits only statements that constitute impermissible hearsay." United States v. Jiminez, 564 F.3d 1280, 1286 (11th Cir. 2009). The Clause "does not bar the use of testimonial statements for purposes other than establishing the

---

[3] To rank as "testimonial," a statement must have a "primary purpose" of establishing or proving "past events potentially relevant to later criminal prosecution." Bullcoming v. New Mexico, 131 S. Ct. 2705, 2714 n.6 (2011)(citing Davis, 547 U.S. at 822)). The Supreme Court has held that an analyst's certification prepared in connection with a criminal investigation or prosecution is "testimonial," and therefore within the compass of the Confrontation Clause. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 319-22 (2009).

truth of the matter asserted." Id. at 1286-87.  Even if Oldeman's testimony could be interpreted as containing out of court testimony regarding the procedure she used to reach her conclusions, her statements regarding the quality control provisions do not violate the Confrontation Clause because they were not offered to prove the truth of the matter asserted.  Ordeman's DNA report was introduced into evidence through Ordeman's testimony, and there is no question that it was done for the purpose of proving the truth of what it asserted: that Petitioner's DNA showed that he likely fathered a child with the victim.  However, Ordeman's statements regarding the quality control procedures at the FDLE laboratory were introduced only to establish that she followed protocol when testing Petitioner's DNA.  As noted by the Supreme Court in Williams v. Illinois, "[i]f DNA profiles could not be introduced without calling the technicians who participated in the preparation of the profile, economic pressures would encourage prosecutors to forgo DNA testing and rely instead on older forms of evidence, such as eyewitness identification, that are less reliable." 132 S. Ct. 2221, 2228 (2012).  For these reasons, Petitioner's Sixth Amendment confrontation right was not violated by Ordeman's testimony.  See Williams, 132 S. Ct. at 2228 ("When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth.  Out-of-court

statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause.").

In addition to being procedurally barred, claim one fails on the merits and is denied pursuant to 28 U.S.C. § 2254(d).

**B.   Claim Two**

Petitioner asserts that the trial court erred when it denied his pre-trial motion to suppress (Doc. 1 at 4-5).  Specifically, Petitioner argues that the warrant obtained by the Lee County Sheriff's Office to recover blood, saliva, and hair samples from Petitioner "was obtained after the charging document was filed against the Petitioner, and therefore, the State's agents were required to comply with Rule 3.220(c), Fla. R. Crim. P. which they did not." (Doc. 1 at 5).[4]  Petitioner asserts that the state erred under Florida law when it failed to notify him of the warrant prior to taking the samples.

---

[4] Rule 3.220(c) states that after a charging document has been filed, the court may require a defendant to "permit the taking of samples of the defendant's blood, hair, and other materials of the defendant's body that involves no unreasonable intrusion thereof." Fla. R. Crim. P. 3.220(c)(1)(G).  The rule further states that if the defendant's personal appearance is required, "reasonable notice of the time and location of the appearance shall be given by the prosecuting attorney to the defendant and his or her counsel." Id. at 3.220(c)(2).

Respondent argues that to the extent Petitioner seeks to raise a constitutional claim, it is unexhausted because Petitioner presented this as an issue of state law to the state courts (Doc. 6 at 6-8). Respondent also asserts that even if Petitioner's passing references to the United States Constitution could be interpreted as an attempt at exhaustion, he has not alleged a cognizable claim under § 2254. Id. at 9-10. Upon review of the record, the Court agrees that Petitioner has failed to present a cognizable federal habeas claim.

Prior to trial, defense counsel filed a motion to suppress the blood samples, saliva samples, head hair, and pubic hair taken from Petitioner pursuant to a valid search warrant (Ex. 2). Although counsel asserted in the motion to suppress that "[t]he actions of the Lee County Sheriff's Office violated the constitutional and statutory rights of [Petitioner] under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution," counsel argued only that Rule 3.220(c) of the Florida Rules of Criminal Procedure required reasonable notice of the time and location where the sample would be taken. Id. After a hearing on the motion, at which counsel argued only that Rule 3.220(c)(2) had been violated (Ex. 3), the motion to suppress was denied (Ex. 4).

Petitioner raised this claim on direct appeal and again argued that "[n]otice could have been given and a hearing could have been

conducted prior to the blood evidence being taken. This would have protected [Petitioner's] constitutional right to privacy." (Ex. 9 at 25). In response, the state noted that the samples were taken pursuant to a valid warrant (which Petitioner does not contest) and argued that the notice requirement of Rule 3.220(c) "is not included in the rule so that a defendant may mount an objection to the testing, it is there to inform the defendant and his attorney when and where to appear." (Ex. 10 at 13). Because Petitioner was in jail at the time the samples were taken, the state argued that notification under Rule 3.220(c) was neither necessary nor required. Id.

Even if Petitioner's passing references to the United States Constitution could be construed as an attempt at exhaustion, he has not raised a claim that is cognizable under § 2254. Petitioner has not shown how the state court's rejection of this claim was contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Rather, Petitioner's claim is merely a state law claim challenging the application of a state law of criminal procedure. A habeas claim grounded on an issue of state law provides no basis for habeas relief because a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. Engle v. Isaac, 456 U.S. 107, 120-21 (1982). "It is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1054–55 (11th Cir. 1983).

Petitioner is not entitled to federal habeas relief on claim two.

### C.   Claim Three

Petitioner asserts that appellate counsel was ineffective for failing to argue on direct appeal that he was convicted of a crime for which he was not charged (Doc. 1 at 5-6).  Specifically, Petitioner alleges that the amended information did not "allege any of the essential elements under [Florida Statute] § 794.011(8)(b), nor does the information track the language of the statutes to allege commission for a crime." (Doc. 1 at 6). Petitioner asserts that the amended information failed to allege "oral, anal, or vaginal penetration by or union with the sexual organ of another or the anal or vaginal penetration of another by any other object." Id.

The amended information in this case listed count one as "Sexual Activity with a Child, F.S. 794.011(8)(b), First Degree Felony." (Ex. 1 at 1).  The information alleged that Petitioner:

> Between October 1, 2003 and January 1, 2004 in Lee County, Florida, did unlawfully engage in sexual activity with M.F., a child twelve years of age or older, but less than eighteen years of age, and at the time of such sexual activity, said defendant was in a position of

> familial or custodial authority to said child,
> contrary to Florida Statute 794.011(8)(b).

(Ex. 1 at 1).  In this case, the amended information specifically referenced Florida Statute § 794.011 which defines all the elements of sexual battery. See Fla. Stat. § 794.011(1)(h) (defining sexual battery as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object[.]").  This is sufficient under Florida law to notify a defendant of the charges against him. See Duboise v. State, 520 So. 2d 260, 265 (Fla. 1988) (holding that when the information references a specific section of the criminal code which sufficiently details all the elements of the offense, the State's failure to include an element of a crime does not automatically render an information so defective that it will not support a judgment of conviction.).  Given that the amended information properly alerted Petitioner to the nature of the charges against him, appellate counsel's decision not to challenge the amended information on direct appeal was within the "wide range of professionally competent assistance" required by Strickland. 466 U.S. at 697.

Moreover, Petitioner cannot demonstrate prejudice from appellate counsel's failure to raise this issue on direct appeal because Florida courts will uphold a charging document if they are in substantial compliance with the statutes, as Petitioner's

amended information was. See Fla. R. Crim. P. Rule 3.140(o) ("No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense."); Price v. State, 995 So. 2d 401, 405 (Fla. 2008) ("Courts should uphold indictments and informations if they are in substantial compliance with the statutory requirements."). Petitioner has not shown, nor asserted, that he was misled as to the nature of the accusations against him or that he was prejudiced in the preparation of a defense. Petitioner cannot show that he suffered prejudice from appellate counsel's failure to raise this issue on direct appeal. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (failure to raise meritless issues cannot prejudice a client).

Claim Three fails to satisfy either prong of Strickland and is denied pursuant to 28 U.S.C. § 2254(d).

**D.   Claim Four**

Petitioner asserts that appellate counsel was ineffective for failing to object to a jury instruction in which the trial court

instructed the jury on the definition of sexual battery of a child (Doc. 1 at 7-8).   In this claim, Petitioner appears to assert that because the amended information did not specifically enumerate the elements of "sexual battery", it was error for the court to instruct the jury as to such. Id.

Although the substance of claim four is not clear, Petitioner appears to believe that the trial court erred when it instructed the jury that one of the elements of sexual battery was that the defendant penetrated or had union with the vagina of the victim or in which the vagina of the victim was penetrated by an object.[5]

_____

[5] The trial court instructed the jury as follows:

> To prove the crime of sexual activity with a child, the State must prove the following three elements beyond a reasonable doubt:
>
> 1.   That [M.F.] was 12 years of age or older, but less than 18 years of age.
>
> 2.   Sterling Hicks stood in a position of familial or custodial authority with regard to [M.F.].
>
> 3.   Sterling Hicks committed an act upon [M.F.] in which either (A) the sexual organ of Sterling Hicks penetrated or had union with the vagina of [M.F.]; or (B) the vagina of [M.F.] was penetrated by an object.
>
> It is not a defense – that [M.F.] was willing to engage in the acts which would constitute sexual battery, or consented to engage in such acts.
>
> The term "union" means contact.

Petitioner does not assert that this instruction contained an incorrect definition or was an invalid statement of the law; rather he appears to believe that it was necessary for the jury instruction to track *verbatim* the language of the charging information (which only referenced the statute that defined sexual battery). See discussion supra Claim Two. Petitioner offers no support for this assertion and the Court, through its own research, has discovered none. As argued by Respondent, "a jury could not be expected to know the definition of sexual battery without being told. Therefore, such an instruction is not only permitted, but necessary." (Doc. 6 at 16). Appellate counsel was not ineffective for failing to raise this claim on direct appeal. Moreover, a review of the record indicates that trial counsel did not preserve an objection to this instruction. Accordingly, any alleged error in the instruction could not have been considered on direct appeal unless it was fundamental. Goodwin, 751 So. 2d at 544. Petitioner does not establish (or even allege) that any claimed error constituted "fundamental error" under Florida law.

The state court's denial of this claim was neither contrary to Strickland nor based upon an unreasonable determination of the facts. Claim Four is denied pursuant to 28 U.S.C. § 2254(d).

---

(T. at 876). There is no indication that trial counsel objected to this jury instruction.

### E.   Claim Five

Petitioner asserts that trial counsel was ineffective for failing to request a <u>Franks</u>[6] hearing in regard to the body search warrant issued in this case (Doc. 1 at 9-10).  Petitioner asserts that the search warrant affidavit contained false statements by Detective Tammy Gray; that a <u>Franks</u> hearing would have resulted in the excision of those false statements; and that the remaining allegations would have been insufficient to establish probable cause for a search warrant.

Petitioner raised this issue as ground one in his Rule 3.850 motion for post-conviction relief (Ex. 16 at 3-8).  In the Rule 3.850 motion, Petitioner asserted that Detective Gray lied on the probable cause affidavit when she stated: "On July 10, 2004, Sterling Hicks was placed under arrest for four counts of Sexual battery and four counts of capital sexual battery in regards to a second victim." (Ex. 16 at 5; Doc. 11 at 8).  Petitioner argued that he was never arrested for a crime against the victim's ten year old sister, the alleged "second victim." (Ex. 16 at 5). The post-conviction court denied the claim as completely refuted by the record:

> As to **Ground 1**, Defendant asserts that trial
> counsel was ineffective for failing to request
> a <u>Franks</u> hearing on the probable cause
> affidavit filed by Detective Gray, which was

---

[6] <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) (affirming the right of defendants to challenge a search warrant).

filed in order to obtain a body search warrant of Defendant.  In his motion, Defendant claims that the probable cause affidavit used by Detective Gray to obtain the body search warrant contained false statements. Specifically, Defendant claims that he was not arrested on four counts of sexual battery upon M.F. and four counts of sexual (assault) battery upon K.F. as alleged by Detective Gray in the affidavit for body search warrant. However, a review of the record of first appearance refutes Defendant's claim in **Ground 1**.  According to the record of first appearance, Defendant was arrested on a total of eight charges – four counts of sexual battery upon M.F. and four counts of sexual battery upon K.F.  Trial counsel cannot be deemed ineffective for raising a meritless claim. *Ridel v. State*, 990 So. 2d 581, 584 (Fla. 3d DCA 2008) (quoting *Teffeteller v. Dugger*, 734 So. 2d 1009, 1023 (Fla. 1999)). Accordingly, Defendant's claim in **Ground 1** is conclusively refuted by the record and without merit.

(Ex. 19 at 4) (emphases in original)(citations to the record omitted).  Florida's Second District Court of Appeal *per curiam* affirmed the post-conviction court's rejection of this claim (Ex. 22).  Respondent asserts that the post-conviction court's adjudication of this claim was neither contrary to <u>Strickland</u> nor based on an unreasonable determination of the facts.  Indeed, a review of the record and applicable law supports the state court's conclusion.

According to the record of Petitioner's first appearance, on July 10, 2004, Petitioner was arrested on four counts of sexual assault of a victim over twelve years of age, using physical force

in violation of Florida Statute § 794.011-5 and four counts of sexual assault of a victim under twelve years of age in violation of Florida Statute § 794.011-2A (Ex. 24).[7] Accordingly, Detective Gray's statement in the probable cause affidavit was not false, and defense counsel was not ineffective for failing to seek a Franks hearing on this basis.

Petitioner filed two unauthorized supplemental replies to the petition in which he pointed out additional discrepancies in the body search probable cause affidavit (Doc. Nos. 16, 18). Even if Detective Gray's references to the victim's younger sister and the additional discrepancies noted by Petitioner in his unauthorized replies were completely excluded from the probable cause affidavit, Petitioner can show no prejudice from counsel's failure to request a Franks hearing.

In Franks v. Delaware, the Supreme Court established a limited form of review for misstatements contained in probable cause affidavits. 438 U.S. at 155-56. "In the event that at [the Franks] hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence,

---

[7] In addition, upon review of the website for the Lee County Clerk of Court, the Court takes judicial notice that Petitioner was arrested on July 10, 2004 on four counts of sexual battery of a victim over the age of twelve in Lee County Case number 04CF1865 and four counts of sexual battery by a person eighteen years of age on a victim less than twelve years of age in Lee County Case number 04CF1866.

and, with the affidavit's false material set to one side, the
affidavit's remaining content is insufficient to establish
probable cause, the search warrant must be voided and the fruits
of the search excluded to the same extent as if probable cause was
lacking on the face of the affidavit." Id.

In addition to the statements regarding Petitioner's arrest
for sexual battery of the victim's younger sister, the probable
cause affidavit stated:

> The victim was identified as a twelve year-
> old black female with the date of birth of
> September 26, 1991, who resides in Lehigh
> Acres, Florida.  The suspect was identified
> as Sterling Hicks, a thirty-five year old
> black male whose date of birth is June 20,
> 1969, who resides at 2416 Milton Avenue,
> Lehigh Acres, Florida.
>
> On July 7, 2004, the Child Protection Team
> conducted a video-recorded interview with the
> victim.  The victim was able to differentiate
> between a truth versus a lie by example and
> promised to tell the truth.  The victim who
> is twelve years old, is visibly pregnant, and
> stated she has been under the care of a
> midwife.  The victim stated she is nine months
> pregnant.    When asked who got the victim
> pregnant, the victim replied "Sterling".  The
> victim explained Sterling is her mother's
> boyfriend, whom also resides in the same
> household.  The victim stated the sexual abuse
> started in October 2003, and ended in January
> 2004, during that time the victim stated her
> mother was working the night shift, and the
> victim would be in bed asleep.  The victim
> recalled six specific incidents, the first in
> October 2003, "I was in my bed asleep,
> Sterling came in and pulled off my blanket, he
> tried to pull down my sleeping shorts, but I
> fought him, he ripped a big hole in my shorts,

and pulled my underwear aside, he put his
private in my private."

The victim stated a second time was in
November 2003, "I was asleep in my bed,
Sterling came in and pulled down my shorts.
I told him to 'Stop', I made noise." He still
put his private into my private."  End of
November 2003, He came into my room, and "did
the same thing, pulled my shorts off and put
his private in my private."  December 2003,
the victim stated Sterling came into my room,
I again fought him off and made noise,
Sterling left my room, without doing anything.
January 2004, "Sterling again came into my
room, and put his private in my private."

(E. 26).  The search warrant sought Petitioner's DNA to link him

to the crime of sexual battery.  Specifically, the affidavit

asserted that a DNA swab was obtained from the victim's infant "to

compare to DNA collected [from] the body search warrant of the

suspect Sterling Hicks." (Ex. 26 at 2).  Because the body search

affidavit was requested for Petitioner's DNA to compare against

the DNA of the twelve year old victim's child, the statements

regarding the victim's sister were irrelevant.  Even excluding

those references, the allegations contained in the probable cause

affidavit were sufficient to establish probable cause.

Accordingly, in addition to failing to show deficient performance,

Petitioner cannot demonstrate prejudice from defense counsel's

failure to request a <u>Franks</u> hearing.

    Claim five fails on both prongs of <u>Strickland</u> and is denied

pursuant to 28 U.S.C. § 2254(d).

### F.  Claim Six

Petitioner asserts that trial counsel was ineffective for failing to move for dismissal of the charge against him (Doc. 1 at 10-11).  Specifically, Petitioner argues that in the probable cause affidavit filed by Detective Gray on July 7, 2004, the only victim identified was K.F., the instant victim's younger sister. Id.  Petitioner argues that "there was no legal reason for the state to formally charge the Petitioner with any crime against M.F.  The Petitioner's trial counsel was therefore required to lodge a timely motion to dismiss these baseless charges." Id.

Petitioner raised this issue as ground two of his Rule 3.850 motion for post-conviction relief, and the post-conviction court denied the claim as conclusively refuted by the record:

> As to **Ground 2**, Defendant asserts that both of his former trial counsels were ineffective for failing to file a pretrial motion to dismiss charges regarding alleged victim M.F. "when investigating Detective Tammy Gray never filed a probable cause affidavit complaint against Defendant of allegedly committing any criminal offense against (M.F.) . . ." The Court finds that Defendant's assertions in **Ground 2** are conclusively refuted by the record as outlined above in **Ground 1**.  Furthermore, the State may amend the information before a trial commences provided the amended charges do not prejudice the substantial rights of a defendant, and it may also amend an information after a trial begins provided the State seeks leave of the court. State v. Clements, 903 So. 2d 919 (Fla. 2005); Henderson v. State, 810 So. 2d 999 (Fla. 4th DCA 2002); State v. Anderson, 537 So. 2d 1373 (Fla. 1989).  The record reflects that an amended information was filed on

> February 12, 2008, which properly charged
> Defendant with sexual activity with (M.F.) a
> child.   Accordingly, Defendant's claim in
> **Ground 2** is conclusively refuted by the record
> and without merit.

(Ex. 19 at 4-5) (emphases in original).   Florida's Second District

Court of Appeal *per curiam* affirmed the post-conviction court's

rejection of this claim (Ex. 22).   Respondent asserts that the

post-conviction court's conclusion was neither contrary to

Strickland nor based upon an unreasonable determination of the

facts.   A review of the record supports the state court's

conclusions.

Under Florida law, the state may substantially amend an

information unless there is a showing of prejudice to the

substantial rights of the defendant.  Toussaint v. State, 755 So.

2d 170, 171 (Fla. 4th DCA 2000).   The record shows that an amended

information was filed on February 12, 2008 charging Petitioner

with unlawful "sexual activity with M.F." (Ex. 1).   Petitioner

does not assert that he did not have an adequate opportunity to

investigate and prepare a defense to the new charge.   To the

contrary, Petitioner's trial was held a year after the amended

information was filed.   Accordingly, defense counsel was not

ineffective for failing to seek dismissal of the charges involving

M.F.  Doing so would have been futile because the State had the

right to amend the charges against Petitioner. See Henderson v.

State, 810 So. 2d 999, 1000 (Fla. 4th DCA 2002) (amendment of

information to add a new charge permissible when "the defense had an adequate opportunity to investigate and prepare a defense to the new charge.").

Petitioner has satisfied neither prong of Strickland. Claim six is denied pursuant to 28 U.S.C. § 2254(d).

### G.   Claim Seven

Petitioner asserts that defense counsel was ineffective for conceding that Petitioner was the father of the victim's child (Doc. 1 at 12). Specifically, he argues that the state's DNA expert "admitted that she could not say with 100% certainty that the Petitioner was the father of the victim's child. . . Despite this acknowledgement, defense counsel essentially conceded that he Petitioner was, in fact, the father of the child in question, during closing argument," Id.

Petitioner raised this claim as Ground three of his Rule 3.850 motion for post-conviction relief, and the post-conviction court denied the claim as conclusively refuted by the record and without merit:

> Defendant appears to be arguing that trial counsel conceded that Defendant was in fact the father of the victim's baby during closing argument and cites to the pages 818, 819, and 864 of the trial transcript. However, the record reflects that trial counsel never conceded that Defendant was the father of the victim's baby during closing argument. In fact, a review of trial counsel's closing argument reveals that he was in fact arguing that scientific DNA evidence did not reveal

> with 100% accuracy that Defendant was the
> baby's father, but that the DNA evidence only
> revealed there was a theoretical possibility
> that Defendant could be the baby's father.
> Accordingly, Defendant's claim in **Ground 3** is
> conclusively refuted by the record and without
> merit.

(Ex. 19 at 5). Florida's Second District Court of Appeal *per curiam* affirmed the post-conviction court's rejection of this claim (Ex. 22). Respondent asserts that the state court's conclusion was neither contrary to Strickland nor based upon an unreasonable determination of the facts. A review of the record supports the state court's conclusions.

During trial, Beth Ordeman, the state's DNA expert, testified that Petitioner was "150 million times more likely in the Caucasian population, 1 million times more likely in the African-American population, and 74 time more likely in the Southeastern Hispanic population" to be the father of the victim's baby than a random person (T. at 575). She testified that Petitioner had "a greater than 99.99 percent chance of being the father than a random person in the population." Id. at 576. On cross examination, defense counsel asked Ordeman:

> Q.  Okay. Is it correct to say that your
>     testimony here today is not saying that
>     Mr. Hicks is the father?
>
>     That's correct, right? You are not
>     saying Mr. Hicks is the father.
>
> A.  That's correct. I am not saying with 100
>     percent scientific certainty that he is
>     the father.

> What I am saying is that it is possible
> that he is the father and that these are
> the statistics that lend weight to that
> possibility.

(T. at 644).  During closing argument, defense counsel strenuously argued that the state had not proven that Petitioner was the victim's child.  <u>See</u> T. at 816 ("The first thing I want to talk about and completely debunk this idea that you should be convinced that this DNA evidence proves that 99.99 percent that Mr. Hicks is the father."); T. at 817 ("It's a fallacy to say that because he's 99.99 percent likely to be the father, that's reality."); T. at 834-35 ("This does not say conclusively by itself that Mr. Hicks is the father."); T. at 836 ("What I want to specifically say was the idea of, they had said that because she's going to testify to him being 99.99 percent likely the father, that somehow that means it's only .01 percent that he's not the father.  Again, I would argue that's a false argument."); T. at 848 ("Michelle could have gotten pregnant by someone else.") T. at 857-58 ("Don't let them trick you into thinking that means he's included.  It just means he's not excluded[.]"); T. at 858 ("We're not arguing necessarily contamination, but I definitely am telling you that this does not say Mr. Hicks is the father.  It says he can't be excluded from being the father.").

Defense counsel did not concede that Petitioner was the father of the victim's child.  Accordingly, Petitioner cannot show

deficient performance and is not entitled to federal habeas relief on Claim Seven.

###    H.    Claim Eight

Petitioner asserts that defense counsel was ineffective for failing to request an individual voir dire of prospective juror Gwen Greenglass (Doc. 1 at 13).   Petitioner asserts that "prospective juror Greenglass stated, before the entire venire, that she had sat through a similar trial as a juror previously, and when asked if she could separate the previous trial from the current one, Ms. Greenglass equivocated, stating, 'I think so. You know, I don't know until it happens.'" Id.

At issue is the following exchange during voir dire:

> STATE:   Now, turning to this case, all that you know about this case at this point is that there's been an accusation made that Mr. Hicks has been charged with the crime of sexual activity to a child.
>
> Anybody who has an immediate gut reaction just from hearing the charge as outlined by the judge?
>
> Okay. Ms. Greenglass.
>
> GREENGLASS:   Only reason I mention is because of the trial that I was on two and a half years ago was the exact same.
>
> Q.   Okay. Kind of an odd coincidence.
>
> A.   Yeah. And I had to sit through that child – just thought I'd mention that.

> Q.      Okay. And do you think that you
>         would be able to separate out
>         that trial that you've gone
>         through previously from this
>         trial?
>
> A.      I think so. You know, I don't know
>         until it happens.
>
> Q.      Sure, sure.  Understanding that
>         the law is different,
>         understanding that the people are
>         different, do you think that you
>         could just listen to the facts
>         and the law in this case?
>
> A.      I think so.
>
> Q.      I saw other hands go up.  People
>         who have immediate reactions to
>         the charge.

(T. at 148-49).  Petitioner argues that Greeglass' statement "had the effect of contaminating the venire to the Petitioner's detriment because in the immediately ensuring [sic] questioning, Prospective Jurors Tisco, Addison, Gardner, Boily, Youmans, Yarkosky, Gruber, and Chaperone each expressed doubt, to varying degrees, that they could not be fair and impartial in this case." Id.

Petitioner raised this claim as ground four in his Rule 3.850 motion for post-conviction relief, and the post-conviction court denied the claim as conclusively refuted by the record and without merit because Petitioner had not shown that a biased juror actually sat on his jury:

> The record conclusively refutes Defendant's
> assertions in **Ground 4**.  First, Ms. Greenglass

stated, "I think so," when she was asked if she could separate the previous trial she served on as a juror from the case at bar in the current case. Furthermore, the record reflects that Ms. Greenglass did not even serve on the jury in the case at bar. Additionally, the prosecutor asked the entire venire at two different times during voir dire whether everyone, except for those who had already voiced their concerns, could listen to the facts of the case and make a decision based solely upon the evidence presented at trial and the law as provided by the judge. Notably, none of the prospective jurors that indicated they would be unable to do so were selected as members of the jury panel. Finally, the record reflects that Defendant's trial counsel did question Ms. Greenglass individually but before the entire venire; however, a review of the exchange does not indicate that anything said by Ms. Greenglass would have prejudice members of the jury panel that were selected to serve. Accordingly, Defendant's claim in **Ground 4** is conclusively refute by the record and without merit.

(Ex. 19 at 6) (emphases in original) (citations to the record omitted). Florida's Second District Court of Appeal *per curiam* affirmed the post-conviction court's rejection of this claim (Ex. 22). Respondent asserts that the record supports the state court's conclusions (Doc. 6 at 23). This Court agrees.

The Sixth Amendment guarantees the accused a trial by an impartial jury in federal criminal prosecutions. U.S. Const. amend VI. Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the Due Process Clause of the Fourteenth Amendment guarantees the same right to the accused in state criminal prosecutions. <u>Duncan v. Louisiana</u>, 391 U.S. 145,

149 (1968).  As with federal law, the test for determining juror competency in the Florida courts is "whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984).

Because empaneled jurors are presumed impartial, Smith v. Phillips, 455 U.S. 209, 215 (1982), to satisfy Strickland's prejudice prong, Petitioner must show that the jury selection process produced a juror that was actually biased against him. Rogers v. McMullen, 673 F.2d 1185, 1189 (11th Cir. 1982) (defendant's Sixth Amendment right to a fair and impartial jury was not violated absent a showing that a jury member hearing the case was actually biased against him).

Petitioner has presented no evidence, or even alleged, that a biased juror served at his trial. Rather, Petitioner suggests that, had counsel objected to Ms. Greenglass' statements, "the trial court would have stricken the venire in this case and the result of these proceedings would have [been] different." (Doc. 1 at 13-14).  Other than speculating in the instant petition that a different panel may have produced a more sympathetic jury, Petitioner does not show that a biased juror actually sat on his jury. See Phillips, 455 U.S. at 215-17 (recognizing that the remedy in the face of allegations of juror partiality is a hearing in which the defendant must prove actual bias).  Moreover, the jury

pool was asked at two different times during voir dire whether they could listen to the facts of the case and make a decision based solely upon the evidence presented at trial and the law as provided by the judge (T. at 150, 160). None of the prospective jurors that indicated they would be unable to do so were selected as members of the jury panel (T. at 363-93).

Petitioner's unsupported and speculative assertions do not entitle him to habeas relief on this claim. See Hill v. Lockhart, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Petitioner fails to establish that the state post-conviction court either unreasonably applied Strickland or unreasonably determined the facts in rejecting this claim of ineffective assistance of counsel. Claim eight is denied.

## I. Claim Nine

Petitioner asserts that defense counsel was ineffective for failing to object to an improper sympathy argument during the state's closing argument (Doc. 1 at 14-15). Specifically, Petitioner asserts that the prosecutor appealed to the jurors' sympathy by stating: "You saw her face, you saw her tears, you saw her demeanor as to [how] she reacted when she testified about that,

because maybe she's 17 now, but the pain is still there.   The pain of what happened to her." Id. at 14.

Petitioner raised this claim as ground five of his Rule 3.850 motion for post-conviction relief, and the post-conviction court denied the claim (Ex. 19 at 7-9).   The post-conviction court agreed that an appeal to the jury for sympathy for the victim during the state's closing argument would be improper, but concluded that Petitioner had taken the statement out of context, because the full statement showed that the state prosecutor "was reviewing the evidence and appears to be inferring that the testimony offered by the victim at trial was credible." Id. at 8.   Accordingly, the post-conviction court concluded that Petitioner's claim was without merit. Id.   Florida's Second District Court of Appeal per curiam affirmed the post-conviction court's rejection of this claim (Ex. 22).   Respondent argues that the state court's findings were reasonable (Doc. 6 at 24-25).   This Court agrees.

Under Florida law, wide latitude is permitted in arguing to a jury during closing argument. Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982).   However, a prosecutor's "request that the jury show sympathy for the victim . . . is clearly improper." Johns v. State, 832 So.2d 959, 962 (Fla. 2d DCA 2002) (citing Thomas v. State, 787 So.2d 27, 30 (Fla. 2d DCA 2001)).   The portion of the state's closing argument at issue is as follows:

> And you had the opportunity to see [M.F.]
> testify.  She's 17 now.  She's done a lot of
> growing up in the last several years, but you
> saw her come in here and testify.
>
> And what happened when she's asked to talk
> about that night?  You saw her face, you saw
> her tears, you saw her demeanor as to how she
> reacted when she needed to testify about that.
> Because maybe she's 17 now, but the pain is
> still there.  The pain of what happened to
> her.
>
> And she knows what happened to her.  We all
> know what happened to her.  She had a baby.
> That tells us what happened to her.
>
> And who did she say was the person who had
> done this?  Sterling Hicks.  And who is the
> man sitting in court right over there?
> Sterling Hicks.

(T. at 810-11).  At trial, defense counsel repeatedly attacked

M.F.'s credibility by suggesting that someone other than

Petitioner was responsible for her pregnancy (T. at 525-41).  When

viewed in context, it was reasonable for the post-conviction court

to conclude that the prosecutor's comments were not an improper

argument for sympathy, but were an explanation as to why the jury

should believe that M.F. was a credible witness.  See Jackson v.

State, 89 So. 3d 1011, 1019 (Fla. 4th DCA 2012) ("[A] prosecutor

may robustly and vigorously argue the truthfulness of a witness

whose credibility is under attack.").  Defense counsel's

performance was not deficient for failing to object to the

prosecutor's statements.  Accordingly, this claim fails under the

first prong of <u>Strickland</u> and is denied pursuant to 28 U.S.C. § 2254(d).

### J.   Claim Ten

Petitioner asserts that trial counsel was ineffective for failing to object to the admission into evidence of State's Exhibit 2-B, an oral swab taken from the victim's infant child (Doc. 1 at 15-17).   Specifically, Petitioner asserts that "the oral swab taken by C.T.S. Subach gave indications of tampering.   Detective Gray testified that she obtained State's Exhibit 2-B from the infant child of M.F. on August 19, 2004." <u>Id.</u> at 15. Petitioner appears to argue that the swab taken by Detective Gray was never tested.   <u>Id.</u> at 16.   Petitioner also speculates that "law enforcement agents secured a swab from the Petitioner's daughter (Alexis Hicks), substituted this oral swab for the alleged victim's infant baby and labeled it as 'child,' thereby obtaining a match for the Petitioner." (Doc. 11 at 15).

Petitioner raised this claim as ground six of his Rule 3.850 motion, and the post-conviction court rejected the claim as conclusively refuted by the record and without merit:

> As to **Ground 6**, Defendant asserts that trial counsel was ineffective for failing to object to State's Exhibit 2-B, a DNA oral swab taken from the victim's baby on grounds that there was not a proper chain of custody established at trial. Defendant seems to be alleging that two oral DNA swabs were taken from the victim's baby: one by "CST Suboch" and the other by Detective Tammy Gray. Defendant

alleges that Detective Gray's trial testimony
indicated that tampering had occurred with the
oral swab, and that in order to establish a
proper chain of custody, the State should have
produced trial testimony from "CST Suboch." At
the trial, counsel for Defendant did object to
the admission of State's Exhibit 2-B during
the testimony of Ms. Beth Ordeman which the
Court sustained with respect to the foundation
of the evidence. The record further reflects
that during the trial testimony of Detective
Gray, State's Exhibit 2-B was admitted into
evidence   after   proper   foundation   was
established  and  trial  counsel  had  no
objection.  According to the trial testimony
of Detective Gray, she obtained two oral swabs
from the victim's baby on August 19, 2004, and
marked it "child of victim."  Detective Gray
further  testified  that  the  procedure  for
taking the DNA samples from the victim and
from  the  victim's  baby  were  identical.
Detective Gray testified that the procedure
for taking DNA oral swab samples is to take
two swabs, one to the inside of each cheek,
let them air dry, then place them into the
box, seal the box, then write the case number,
date, name of the sampled person, and then she
signs her name to the box. (T. 671). According
to trial testimony of Ms. Ordeman, State's
Exhibit 2-B was sealed when she received it
and it had her initials on it, the case number,
and the date she opened it.  Accordingly, the
State  laid  a  proper  foundation  for  the
admission  of  State's  Exhibit  2-B  into
evidence.  Trial  counsel  cannot  be  deemed
ineffective  for  raising  a  meritless  claim.
*Ridel*, 990 So. 2d at 584. Accordingly,
Defendant's claim in **Ground 6** is conclusively
refuted by the record and without merit.

(Ex. 19 at 9-10) (emphases added) (internal citations to the record

omitted.  Florida's Second District Court of Appeal *per curiam*

affirmed the post-conviction court's rejection of this claim (Ex.

22).  A review of the record supports the state court's rejection of this claim.

At trial, DNA expert Ordeman testified that she received oral swabs represented as being from the victim and her infant child (T. at 571).  She stated that she took the known samples from Petitioner, the victim, and the victim's baby and generated DNA samples for all three. Id.  Ordeman testified that after she determined that Petitioner could have passed his DNA to the child, she calculated the statistics associated with that (T. at 571-72).  The state moved to enter the state's exhibits, including exhibit 2B, containing the DNA swabs from the victim and her baby, into evidence. Id.  Counsel objected – both to preserve a pre-trial motion to suppress the DNA evidence and because no testimony had been entered to establish the chain of custody of the DNA samples. Id. 72-73.[8]  The objection was sustained with respect to foundation, but the DNA expert was allowed to testify to the results of her analysis based upon her examination of the DNA swabs. Id. T. at 574.

After DNA expert Ordeman testified, Detective Tammy Gray testified that she personally took swabs from the victim and her infant child (T. at 671, 693).  She took the infant's DNA on August

---

[8] The DNA expert was available to testify for only one day. Accordingly, she testified prior to the witnesses who could establish the chain of custody.

19, 2004, and she took the victim's DNA on October 20, 2004. Id. at 673. Detective Gray explained how the DNA swabs were taken and testified that the swabs (as entered into evidence) appeared to be in the same condition as when she took them. Id. at 672. Contrary to Petitioner's assertions otherwise, nothing in the record suggests that any DNA sample was tampered with or that the crime scene technicians somehow substituted the DNA of Petitioner's older daughter for that of the victim's infant in an attempt to frame Petitioner for this crime.[9]

This Court defers to the trial court's factual findings and credibility determinations, as Petitioner has not shown by clear and convincing evidence that the findings were unreasonable. See 28 U.S.C. §§ 2254(d)(2), (e)(1); Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' §

---

[9] Petitioner's statements regarding the participation of crime scene technician Suboch in collecting the DNA of the victim and her child appear to be based upon a report from the Florida Department of Law Enforcement which states that two "exhibits" (DNA samples) were submitted for testing on October 13, 2004 and October 21, 2004 by "CST Suboch."(Doc. 16-8).  The report was addressed to the attention of "Suboch/Gray."  Nothing in the report contradicts any testimony at trial in that the report is silent on which crime scene technician actually collected the DNA samples.  Petitioner's assertions that CST Suboch, not CST Gray, collected the samples appear to be based solely upon speculation.

2254(d)(2). Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.").

Likewise, Petitioner cannot show that the state court's decision resulted in an unreasonable application of Strickland. Petitioner's claims that counsel was ineffective for failing to object to the chain of evidence or to suggest that Petitioner was framed by Detective Gray are contradicted by the record and too speculative to warrant consideration. Tejada, 941 F.2d at 1559 (11th Cir. 1991) (vague, conclusory, speculative, or unsupported claims cannot support a claim of ineffective assistance of counsel); Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation).

In light of the state court record and the Rule 3.850 court's factual findings, this court cannot conclude that the state court's legal conclusion - that trial counsels' failure to object to the chain of evidence or to argue that Petitioner was framed was not deficient - was an unreasonable application of Supreme Court law. Claim ten is denied pursuant to 28 U.S.C. § 2254(d).

K.    **Claim Eleven**

Petitioner claims that the cumulative effect of trial counsel's errors as alleged in grounds five through ten deprived him of a fair trial (Doc. 1 at 17).

This court need not determine whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law. Petitioner has not shown an error of constitutional dimension with respect to any federal habeas claim. Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. See Morris v. Sec'y Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel, but holding that the petitioner's cumulative error argument lacked merit because he did

not establish prejudice or the collective effect of counsel's error on the trial).  Petitioner is not entitled to relief on claim eleven.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. **Certificate of Appealability**[10]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement

---

[10] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id.  As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

to proceed further.'" <u>Miller-El</u>, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Sterling Hicks (Doc. 1) is **DENIED**, and this case is dismissed with prejudice.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this   23rd   day of February, 2015.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Sterling Hicks
Counsel of Record